# EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

MOUN KEODALAH and AUNG
KEODALAH, husband and wife,

                Plaintiffs,

      v.

ALLSTATE INSURANCE COMPANY, a
corporation, and TRACEY SMITH and JOHN
DOE SMITH, husband and wife,

           Defendants.

Case No.: 15-2-18663-9 SEA

**COMPLAINT FOR INSURANCE BAD
FAITH, BREACH OF FIDUCIARY
DUTY, AND VIOLATIONS OF THE
CONSUMER PROTECTION ACT AND
INSURANCE FAIR CONDUCT ACT**

**COMES NOW** the plaintiff, Moun Keodalah, by and through his attorney of record,
Vonda M. Sargent, and states, claims, and alleges as follows:

## I. JURISDICTION

1.1    The above-captioned Court has jurisdiction over the parties and subject matter.

## II. VENUE

2.1    The above-captioned Court is the proper venue pursuant to RCW 4.12.025 because
defendant ALLSTATE INSURANCE COMPANY ("Allstate") transacts business in
King County, Washington.

## III. IDENTIFICATION OF THE PARTIES

3.1    At all times material hereto, plaintiff Keodalah has resided in King County, Washington.

Complaint - 1

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.638.4970

3.2    Upon information and belief, defendant Allstate was at all times material hereto a properly licensed insurance company doing business in King County, Washington.

3.3    Upon information and belief, defendants Tracey and John Doe Smith (collectively "defendant Smith"), husband and wife, and the marital community comprised thereof, have at all times material hereto resided in King County, Washington.

3.4    At all times material hereto, defendant Allstate employed defendant Smith as a claims adjustor.

3.5    Plaintiff Keodalah contracted with defendant Allstate for motor vehicle insurance.

3.6    Defendant Allstate insured plaintiff Keodalah pursuant to an automobile insurance contract, policy number #6-17-233432 ("Policy").

3.7    Defendant Allstate accepted premiums and promised to provide plaintiff Keodalah with Personal Injury Protection ("PIP") medical benefits coverage of up to $10,000 per person, plus income loss and household services benefits, and Underinsured Motorist ("UIM") coverage benefits of up to $25,000 per person, $50,000 per occurrence.

3.8    The Policy was in full force and effect on April 2, 2007.

## IV. FACTS RELATED TO MR. KEODALAH'S APRIL 2, 2007 COLLISION

4.1    On April 2, 2007, Mr. Keodalah was involved in a motor vehicle collision.

4.2    Mr. Keodalah was in his truck.

4.3    Mr. Keodalah was at a stop sign.

4.4    Mr. Keodalah came to a complete stop.

4.5    Mr. Keodalah began crossing the street.

4.6    Mr. Keodalah's truck was struck by a speeding motorcyclist.

4.7    The impact killed the motorcyclist.

4.8    Mr. Keodalah was injured as a result of the collision.

4.8    Mr. Keodalah sought treatment for his injuries.

Complaint - 2

4.9     Mr. Keodalah used his PIP policy to obtain medical care.

4.10    Defendant Allstate paid Mr. Keodalah's medical bills.

4.11    The motorcyclist was uninsured.

4.12    The Seattle Police Department ("SPD") investigated the collision.

4.13    SPD determined the motorcyclist was traveling between 70 and 74 miles per hour.

4.14    The speed limit was 30 miles per hour.

4.15    SPD concluded that the motorcyclist's speed caused the collision.

4.16    SPD reviewed Mr. Keodalah's cell phone records.

4.17    Mr. Keodalah was not using his cell phone at the time of the collision.

4.20    Dr. Brian Mazrim, of the King County Medical Examiner's Office, opined that the motorcyclist died "from the injuries suffered upon impact with the vehicle."

4.21    SPD concluded Mr. Keodalah did not kill the motorcyclist.

4.22    SPD did not charge Mr. Keodalah.

4.23    SPD did not cite Mr. Keodalah.

## V. FACTS RELATED TO ALLSTATE'S CLAIM HANDLING

5.1     Mr. Keodalah had a UIM policy with a limit of $25,000.

5.2     Insured Keodalah's Allstate PIP and UIM Policy was in full force and effect on April 2, 2007, the date of the collision.

5.2     Defendant Allstates employee Celia A. Hart investigated the collision.

    5.2.1   Defendant Allstate's employee Celia Hart interviewed witness Jasmine Riach on May 29, 2007.

    5.2.2   Witness Riach told Allstate/Hart that the motorcyclist had "squeezed in between" her car and the car in the next lane.

    5.2.3   Witness Riach told Allstate/Hart "the motorcycle guy was going 80, 75 miles – 80 miles an hour plus."

Complaint - 3

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.638.4970

5.2.4   Witness Riach told Allstate/Hart that "I was cursing this guy, like, this guy needs to slow down.  Something could happen."

5.2.5   Witness Riach told Allstate/Hart that the motorcyclist "was going ridiculously fast."

5.2.6   Defendant Allstate's employee Hart documented her investigation on or about May 31, 2007.

5.2.7   Defendant Allstate employee Hart recorded that its insured Keodalah "did stop at the traffic control."

5.2.8   Defendant Allstate's employee Hart recorded that, per witness Raich, if the motorcyclist hadn't "cheated" the "accident would not have happened".

5.2.9   Defendant Allstate's employee Hart recorded that, per witness Raich, if the motorcyclist hadn't "sped," the "accident would not have happened".

5.2.10  Defendant Allstate's employee Hart assessed liability 100% to Keodalah.

5.3   Defendant Allstate's employee Scott McFarland investigated the collision.

5.3.1   Defendant Allstate's employee Scott McFarland interviewed witness Sean Healy on June 15, 2007.

5.3.2   Witness Healy told Allstate/McFarland that when the motorcyclist got to the bottom of the hill, he "began to rev up his bike, and looked like he increased in speed fairly quickly."

5.3.3   Witness Healy told Allstate/McFarland the speed limit was "like 30 or so."

5.3.4   Witness Sean Healy told Allstate/McFarland the motorcyclist was "going probably a lot faster than that. 'Cause, uh, I heard it rev up."

5.3.5   Witness Sean Healy told Allstate that he heard the bike "constantly changing gears."

Complaint - 4

5.3.6   Defendant Allstate's employee McFarland documented his investigation on or about June 25, 2007.

5.3.7   Defendant Allstate's employee McFarland recorded that witness 03 (Raich) said the motorcyclist had "cheated" at the intersection.

5.3.8   Defendant Allstate's employee McFarland recorded that witness 03 (Raich) said the motorcyclist had then "sped up the hill in excess of 70 mph."

5.3.9   Defendant Allstate's employee McFarland recorded that witness 04 (Healy) said the motorcyclist had "accelerated going up the hill and went through 2-3 gears during acceleration."

5.3.10   Defendant Allstate's employee Scott McFarland recommended that Allstate hire an accident reconstructionist.

5.4   Defendant Allstate hired accident reconstructionist Richard Chapman, of Traffic Collision Analysis, Inc. ("TCA"), to reconstruct the collision.

5.4.1   TCA sent defendant Allstate a report on or about August 17, 2007.

5.4.2   TCA found that plaintiff Keodalah stopped at the stop sign.

5.4.3   TCA found the motorcyclist was traveling at a minimum of 60 miles per hour.

5.4.4   TCA found that the motorcyclist's "excessive speed" caused the collision.

5.4.5   TCA directed defendant Allstate to acquire the SPD report.

5.4.6   TCA directed defendant Allstate to review the SPD report.

5.5   Defendant Allstate's employee Robert Bjorback Jr. reviewed the TCA report on or about August 28, 2007.

5.5.1   Defendant Allstate's employee Bjorback recorded TCA's conclusion that the motorcyclist travelled 2x the legal limit.

Complaint - 5

5.5.2    Defendant Allstate's employee Bjorback recorded TCA's conclusion that "the accident would not have occurred" if the motorcyclist had been going the speed limit.

5.5.3    Defendant Allstate's employee Bjorback recorded TCA's conclusion that "all known witnesses testify" the motorcyclist was travelling at a high rate of speed.

5.5.4    Defendant Allstate's employee Bjorback determined it was proper to use plaintiff Keodalah's policy limits to pay the motorcyclist "based upon damages exposure."

## VI. FACTS RELATED TO ALLSTATE'S INTERACTIONS WITH ITS INSURED

6.1    Insured Keodalah requested that defendant Allstate pay him policy limits of $25,000 pursuant to his UIM policy, on or about April 8, 2008.

6.2    Insured Keodalah provided to defendant Allstate his medical records and other documentation substantiating his injuries and damages.

6.3    Defendant Allstate employee Ed Sumabat informed his insured that Allstate assessed him "70%" at fault on July 11, 2008.

6.4    Defendant Allstate employee Ed Sumabat calculated it's insured's medical expenses at $6789.

6.5    Defendant Allstate employee Ed Sumbat calculated it's insured's wage loss at $2063.20.

6.6    Defendant Allstate offered its insured Keodalah $1,600 to settle his claim.

6.7    Insured Keodalah requested the basis for defendant Allstate's evaluation of his claim, on August 6, 2008.

6.8    Defendant Allstate employee Sumabat informed its insured it "*will not be providing*" a copy of the accident reconstructionists report on August 11, 2008.

6.9    Insured Keodalah sent a 20-day notice pursuant to the Washington Insurance Fair Conduct Act ("IFCA") on June 24, 2009.

Complaint - 6

6.10   Defendant Allstate responded to the IFCA notice on July 17, 2009.

6.11   Defendant Allstate increased its offer to $5,000 in its response.

6.12   Insured Keodalah did not provide any additional facts related to his claim.

6.13   Defendant Allstate failed to explain why it found its insured 70% at fault.

## VII.   FACTS RELATED TO LITIGATION

7.1    Insured Keodalah filed suit on June 28, 2012.  *Keodalah v. Allstate Ins. Co.*, CV 125-02941.

7.2    Defendant Allstate's Answer to plaintiff Keodalah's Complaint was due July 18, 2012.

7.3    Defendant Allstate did not serve its Answer until August 13, 2012.

7.4    Defendant Allstate denied liability.

7.5    Defendant Allstate alleged plaintiff Keodalah failed to mitigate his damages.

7.6    Defendant Allstate alleged plaintiff Keodalah's own negligence proximately caused his injuries.

7.7    Defendant Allstate requested that the Court dismiss plaintiff Keodalah's case *with prejudice*.

7.8    Defendant Allstate requested that the Court *award defendant Allstate costs and attorney fees* for having to defend against plaintiff Keodalah.

7.9    Plaintiff Keodalah served discovery requests on defendant Allstate on October 19, 2012.

7.10   Defendant Allstate's responses were due 30 days later.

7.11   Defendant Allstate, through its attorney, Jodi Held, and its claim representative, defendant Smith, responded on December 4, 2012.

7.12   Defendant Allstate asserted plaintiff Keodalah was at fault for the collision.

7.13   Defendant Allstate asserted plaintiff Keodalah failed to stop, at the stop sign, and caused the collision.

7.14   Defendant Allstate acknowledged that it had the SPD report.

Complaint - 7

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.638.4970

7.15    Defendant Allstate acknowledged that it had the TCA report.

7.16    Defendant Allstate hired attorney Marilee Erickson on or about January 9, 2013.

7.17    Defendant Allstate designated defendant Allstate adjustor Tracey Smith as its CR 30(b)(6) representative on February 28, 2013.

7.18    Defendant Allstate, through its attorney Marilee Erickson, argued that it had no information relevant to Mr. Keodalah's case.

7.19    The trial court ordered defendant Allstate to respond to discovery regarding its decision allocating fault to its insured.

7.20    Defendant Allstate testified, through its designee defendant Smith, that it did not know when it made its liability decision.

7.21    Defendant Allstate testified, through its designee defendant Smith, that it did not know when it determined the value of plaintiff Keodalah's claim for damages.

7.22    Defendant Allstate's attorney, Marilee Erickson, and its corporate designee defendant Tracey Smith, alleged that plaintiff Keodalah had run the stop sign and was therefore at fault.

7.23    Defendant Allstate subsequently admitted, through its designee defendant Smith, that plaintiff Keodalah had not run a stop sign.

7.24    Defendant Allstate's designee Smith alleged plaintiff Keodalah had been on his cell phone and was therefore at fault.

7.25    Defendant Allstate subsequently admitted plaintiff Keodalah was not on his cell phone.

7.26    Defendant Allstate offered to settle plaintiff Keodalah's claim for $15,000 in March, 2013.

7.27    Defendant Allstate's offer was substantially less than the $25,000 policy limits.

7.28    Defendant Allstate refused to explain to plaintiff Keodalah what had changed to increase its offer from $1,600 to $15,000.

Complaint - 8

7.29   Plaintiff Keodalah did not provide any additional or new information to defendant Allstate before it increased its offer.

7.30   Plaintiff Keodalah offered to settle the claim for policy limits in October, 2013; defendant Allstate refused.

## VIII. FACTS RELATED TO TRIAL

8.1   On March 10, 2014, defendant Allstate asked the Court to fully exclude defendant Smith's testimony.

8.2   Defendant Allstate argued that its determination that plaintiff Keodalah was at fault for the collision was opinion testimony, inadmissible, and irrelevant.

8.3   Defendant Allstate argued that the jury *should not be allowed to hear* that defendant Allstate had decided plaintiff Keodalah caused the collision and killed the motorcyclist.

8.4   The Court disagreed and ruled that plaintiff Keodalah was allowed to inquire of defendant Allstate why and upon what basis it had determined he was at fault for the collision.

8.5   Defendant Allstate testified that plaintiff Keodalah was 70 percent at fault for killing the motorcyclist, but also testified it did not know when it determined he was at fault.

8.6   Defendant Allstate testified that it relied upon the eyewitness statements to determine plaintiff Keodalah's fault.

8.7   Defendant Allstate testified that it relied upon the police report to determine plaintiff Keodalah's fault.

8.8   Defendant Allstate testified that it relied upon its the TCA report to determine plaintiff Keodalah's fault.

8.9   Defendant Allstate testified that plaintiff Keodalah failed to stop at a stop sign.

8.10   Defendant Allstate testified that plaintiff Keodalah did not fail to stop at a stop sign.

Complaint - 9

8.11    Defendant Allstate testified that, when it initially stated plaintiff Keodalah failed to stop at a stop sign, it knew that statement was not true.

8.12    Defendant Allstate testified it changed its position regarding the stop sign after "another attorney looked at the answers...".

8.13    Defendant Allstate testified that plaintiff Keodalah failed to yield to the motorcycle.

8.14    Defendant Allstate testified there were no facts or evidence that plaintiff Keodalah failed to yield.

8.15    Defendant Allstate testified that there is a Washington statute governing plaintiff Keodalah's alleged failure to yield.

8.16    Defendant Allstate testified plaintiff Keodalah asked for the statute a year earlier.

8.17    Defendant Allstate testified it did not provide plaintiff Keodalah the statute.

8.18    Defendant Allstate could not provide the statute at trial.

8.19    Defendant Allstate testified that it had not taken any steps to look for the statute.

8.20    Defendant Allstate testified that plaintiff Keodalah was on his cell phone at the time of the collision.

8.21    Defendant Allstate refused to change its position regarding liability after learning plaintiff Keodalah was not on his cell phone at the time of the collision.

8.22    Defendant Allstate refused to change its position regarding liability after it learned that the speed of the motorcycle caused the collision.

8.23    Defendant Allstate conceded its accident reconstructionist TCA's conclusions did not support defendant Allstate's finding of fault.

8.24    Defendant Allstate testified that its insured, plaintiff Keodalah, violated some rule because he was involved in a collision.

8.25    Defendant Allstate testified that it relied upon the fact there was a collision in determining their insured's fault.

Complaint - 10

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.638.4970

8.26   Defendant Allstate could not explain how it determined plaintiff Keodalah was 70% at fault for the collision.

8.27   No one testified that plaintiff Keodalah was 100% at fault for the collision.

8.28   Defendant Allstate, in its closing argument to the jury, argued plaintiff Keodalah *was 100% at fault* for the collision.

8.29   Defendant Allstate argued that the motorcycle's speed was a "red herring".

8.30   Defendant Allstate argued that plaintiff Keodalah *failed to stop* at a stop sign.

8.31   Defendant Allstate's argument placed the full fault of the motorcyclist's death on its insured, plaintiff Keodalah.

8.32   The jury determined the motorcyclist to be 100% at fault for the collision on March 12, 2014.

8.33   The jury and awarded plaintiff Keodalah $108,868.20 for his injuries, lost wages, and medical bills.

## IX. FACTS RELATED TO POST-TRIAL PROCEEDINGS

9.1   Defendant Allstate, through its attorney, Marilee Erickson, filed a motion for new trial on May 12, 2014.

9.2   Defendant Allstate alleged it had been denied a fair trial due to irregularities.

9.3   Defendant Allstate alleged it had been denied a fair trial due to plaintiff's counsel's misconduct in "purposefully interjecting claims handling evidence" into the case.

9.4   Defendant Allstate argued it had been required to regularly object because plaintiff's counsel insisted upon bringing up evidence of defendant Allstate's liability conclusion.

9.5   Defendant Allstate alleged it had been denied a fair trial because the jury's general damages award was "so excessive to indicate that it is a result of passion and prejudice".

9.6   The Superior Court ruled against defendant Allstate and entered judgment against it on May 19, 2014 for $25,302.95, to bear interest at 5.25 percent per annum.

Complaint - 11

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.638.4970

9.7   Defendant Allstate did not pay the judgment until July 16, 2014, and paid no interest on the money owed.

9.8   On April 15, 2015, plaintiff Keodalah sent a 20-day notice pursuant to IFCA to defendant Allstate and the Commissioner requesting that defendant Allstate resolve the claims-handling and payment issues regarding plaintiff Keodalah's insurance claim by paying damages to plaintiff Keodalah for defendant Allstate's uncooperative and unreasonable settlement practices prior to litigation, during the action and trial it forced plaintiff Keodalah to institute and endure, and in its post-judgment actions and failures.

9.9   Defendant Allstate and the Commissioner received the notice three business days after it was mailed, pursuant to IFCA.

9.10  Defendant Allstate failed to resolve the basis for plaintiff Keodalah's IFCA claim in the twenty day period authorized by IFCA.

## X. STATUTORY AND REGULATORY VIOLATIONS

10.1  Defendants Allstate's and Smith's acts and omissions alleged herein are in violation of specific unfair claims settlement practices as set forth in WAC 284-30 *et seq.*, as well as other statutes or regulations, including, but not limited to, RCW 48.30.015, regarding unreasonable denial of a claim for coverage or payment of benefits.

10.2  Defendants Allstate and Smith breached numerous Washington Administrative Code requirements, including, but not limited to, the following:

10.2.1  Defendants Allstate and Smith attempted to settle Mr. Keodalah's claim for less than an amount to which a reasonable person would have believed he or she was entitled;

10.2.2  Defendants Allstate and Smith failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under plaintiff Keodalah's insurance policy;

Complaint - 12

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.638.4970

10.2.3 Defendants Allstate and Smith failed to conduct a reasonable investigation to fully evaluate the facts of the crash, nature and extent of plaintiff Keodalah's injuries, and amount of plaintiff Keodalah's damages;

10.2.4 Defendants Allstate and Smith failed to attempt, in good faith, to effectuate a prompt, fair, and equitable settlement of plaintiff Keodalah's claim for UIM benefits where liability was reasonably clear;

10.2.5 Defendants Allstate and Smith compelled plaintiff Keodalah to initiate litigation to recover amounts due him under his insurance policy by offering substantially less to settle plaintiff Keodalah's claim than he ultimately recovered in the litigation; and

10.2.6 Defendants Allstate and Smith failed to promptly provide a reasonable explanation of the basis in the insurance policy to the facts or applicable law for denial of plaintiff Keodalah's claim or for the offer of a compromise settlement.

## X. INSURANCE BAD FAITH

10.1 Defendants Allstate and Smith had a duty to act in good faith, which required that all of defendant Allstate's and Smith's actions be actuated by good faith, that they abstain from deception and practice honesty and equity in all insurance matters, and that they deal fairly with its insured, giving equal consideration to the insured's interests.

10.2 Defendant Allstate's and Smith's actions and omissions alleged herein are in violation of RCW 48.01.030 and their duty to act in good faith.

10.3 Defendant Allstate's and Smith's acts and omissions directly and proximately caused plaintiff Keodalah to suffer injuries and damages in an amount to be proven at trial.

## XI. BREACH OF FIDUCIARY DUTY

11.1 Defendant Allstate, by virtue of its position and authority to engage in the insurance business in the State of Washington, owed a fiduciary or quasi-fiduciary duty and

Complaint - 13

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.638.4970

enhanced obligation of fairness to its insured from whom it accepted premiums and to whom it promised to provide insurance protection, including PIP and UIM.

11.2   Defendant Allstate's acts and omissions alleged herein violated its fiduciary or quasi-fiduciary duties and directly and proximately caused plaintiff Keodalah to suffer injuries and damages in an amount to be proven at trial.

## XII. CONSUMER PROTECTION ACT ("CPA") VIOLATIONS

12.1   Defendants Allstate's and Smith's WAC violations alleged herein, as well as their other unreasonable acts and omissions, harmed plaintiff Keodalah and constitute *per se* CPA violations.

12.2   Defendants Allstate's and Smith's bad-faith conduct also constitutes *per se* CPA violations.

12.3   Defendants Allstate's and Smith's acts and omissions alleged herein directly and proximately caused plaintiff Keodalah to suffer injuries and damages in an amount to be proven at trial.

## XIII. IFCA VIOLATIONS

13.1   Defendant Allstate unreasonably denied plaintiff Keodalah's claim for coverage or payment of benefits.

13.2   Defendant Allstate breached numerous WAC insurance regulatory provisions, including, but not limited to, those set forth in WAC 284-30-330, as alleged herein.

13.3   On June 24, 2009, plaintiff Keodalah sent a 20-day written notice of the basis for his IFCA claim to Allstate and the Commissioner pursuant to RCW 48.30.015(8)(a).

13.4   Defendant Allstate failed to resolve the basis for plaintiff Keodalah's IFCA claim within the 20 days specified by RCW 48.30.015(8)(a)-(b).

13.5   Defendant Allstate thereafter unreasonably denied plaintiff Keodalah's claim for coverage or payment of benefits.

Complaint - 14

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.638.4970

13.6    Defendant Allstate thereafter breached numerous WAC insurance regulatory provisions, including, but not limited to, those set forth in WAC 284-30-330, as alleged herein.

13.7    On April 15, 2015, plaintiff Keodalah sent a 20-day written notice of the further basis for his IFCA claim to Allstate and the Commissioner pursuant to RCW 48.30.015(8)(a).

13.8    Defendant Allstate failed to resolve the basis for plaintiff Keodalah's IFCA claim within the 20 days specified by RCW 48.30.015(8)(a)-(b).

13.9    Defendant Allstate's regulatory violations, failure to properly adjust plaintiff Keodalah's claim, and unreasonable denial of plaintiff Keodalah's claim for coverage or payment of benefits directly and proximately caused plaintiff Keodalah to suffer injuries and damages in an amount to be proven at trial.

## XIV. RIGHT TO AMEND

14.1    Plaintiff Keodalah reserves the right to amend this Complaint either before or during trial, which amendments may include but are not limited to additional legal theories for liability or damages incurred, or to conform the pleadings to the proof offered at the time of trial.

## XV. RELIEF REQUESTED

15.1    As a PROXIMATE RESULT OF THE FOREGOING, plaintiff Keodalah has suffered, and continues to suffer, special and general damages in an amount to be proven at trial.

WHEREFORE, plaintiff Keodalah requests that the Court enter judgment against defendants Allstate and Smith as follows:

A.      Judgment against defendant Allstate for insurance bad faith;

B.      Judgement against defendant Smith for insurance bad faith;

C.      Judgment against defendant Allstate for breach of fiduciary or quasi-fiduciary duties;

Complaint - 15

D.      Judgment against defendant Allstate for CPA violations;

E.      Judgment against defendant Smith for CPA violations;

F.      Judgment against defendant Allstate for IFCA violations;

G.      Judgment against defendants Allstate and Smith in an amount to fairly compensate plaintiff Keodalah for his special and general damages;

H.      Judgment against defendants Allstate and Smith awarding actual, consequential, treble, and all other allowable damages under the CPA;

I.      Judgment against defendant Allstate awarding actual, consequential, treble, and all other allowable damages pursuant to RCW 48.30.015;

J.      Judgment against defendants Allstate and Smith awarding reasonable attorneys' fees and actual and statutory litigation costs, including expert-witness fees, pursuant to RCW 48.30.015(3), the CPA, *Olympic Steamship v. Centennial Ins.*, 117 Wn.2d 37 (1991), and other applicable law; and

K.      Other and further relief as this Court may deem just and equitable.

**DATED** this 3rd day of August 2015.

By: _____
Vonda M. Sargent, WSBA #24552
Attorney for Plaintiff

Complaint - 16

THE LAW OFFICES OF VONDA M. SARGENT
119 1st Ave. S., Suite 500
Seattle, WA 98104
206.638.4970